And the last case for argument is Greene v. St. Barnabas Hospital, and Ms. Greene has five minutes to argue, and we understand that counsel for the hospital is here if we have questions of him or them, right? Two of you? You're Mr. Frank, right? Yes, sir. Yeah, I think we've met before, so. Oh, okay, Ms. Lozier, thank you. Ms. Greene, just one minute, please, and then we'll have you. Good morning. Good morning. Members of the Second Circuit, I'm so happy to be here today. May it please the Court, my name is Lisa Greene. I am presenting pro se as plaintiff. And I'm also here respectfully asking for the Court to be. It would be easier if you spoke a little more directly into the mic. Oh, thank you. Thank you. Did you hear me, or should I start over? Okay. I'm going to start from my name is Lisa Greene. My name is Lisa Greene. I'm pro se as plaintiff, and I am asking the Court respectfully to vacate the judgment of the lower court in favor of me, and I'm nervous. I'm so sorry. Can I ask you a question, then? Yes. That is, has there been any explanation given as to why the notice of your hearing was sent to your mother's address rather than to your address? No. Other than that she didn't want you to get it. That's your argument. That's exactly right. But have you heard any other explanation, like there was a stale address or that you had not notified them of your new address, anything like that? No. Did you used to live at that address? No. It's my mother's address. No, I understand. Right. But, Your Honor, I work in New York, so I do visit my mom. And, you know, she's sickly, so I do come see her every once in a while. So I don't know why that address was chosen. I've always lived in New Jersey. Did you get the notice, though? Did your mother say, I got this letter in the mail for you? No. She has dementia. But you didn't know at all, huh? No. I just came by for a visit. But I know where she puts mail. So I looked through it, and I saw this letter. Of course, I was very, very upset, and I called Nadine Williamson immediately. Why did you send this letter to my mother's house? Was it after the date of the hearing that you found the letter? Just a few days after. Yeah. She said, oh, I just wanted to give you a notice. It was nothing to me that would explain why she would do that when she always called me and sent me texts and e-mails. Why would you send a letter to my mother's house? You can send it in addition, but why not send it to New Jersey where you know I live? That didn't make any sense to me. And so did you ultimately did the union or through the union rep try to work out a time for that, I'll call it a Part 3 meeting, I think. That's correct. It's called a Stage 3. Stage 3. Right. Stage 3, after that, it took about seven months. To have it scheduled. To have it scheduled. Right. And that was canceled. And the way I found out that meeting was canceled is because I had called Nadine. Actually, I was calling her a few days before that she never answered. So I text, and then I end up calling a delegate who ended up reaching Nadine. And then Nadine reached me. That's how exactly that happened. And I was calling to find out how early should I come for the prep. And then she said, oh, that meeting was canceled. Like it was nothing. I said, huh? When were you going to tell me the meeting was canceled? Oh, I'm sorry. I mean, this kind of thing was going on and on. And the reason I'm saying that the lower court erred is because they did not apply the proper standard of review when drawing these conclusions since the reasoning for his conclusion rested on false premise. He didn't have what he needed to make this proper conclusion. Now, I did read his judgment. What is it? Judgment? His decision. His decision. Thank you. And I saw lots of things in there that was not true. And I was trying to figure out how did it get there. So I had a discussion with my then attorney. And he said that's why we are going to appeal because it didn't make sense to him either. And one thing I wanted to say, I heard and I read in the, what did you call it, order that he went on a 301 hybrid. I read in a lot, as a matter of fact, a lot of the case that, and I read every last one of them that was in the briefs from 1199 and St. Barnabas has nothing to do with the case that I was injured with. It's totally different. Actually, the closest one is white versus white rolls food. And Section 301 of the Labor Management Relations Act of 1947 of the LMRA 29, USC Section 185 governs the employee's duty to honor the collective bargaining agreement. And the duty of fair representation is implied under the scheme of the National Relations Act, which if, even if the lower court found that I did not prove a DFR, it should have not extinguished my rights under the employer. And that is white versus white rolls food. What is your current status now, Ms. Green? Meaning unemployed? Are you unemployed? Yes. Yes, ma'am. Thank you. What's the status of the union arbitration, though? There has been no movement since the decision of the lower court. As a matter of fact, I'm glad you mentioned that because Judge Broderick dismissed my claims without prejudice, stating that if I still felt that this was an issue, I can bring it back. However, nothing has happened since that decision. And here we are. Thank you. I wanted to mention this also. Do you have a question? I'm sorry. No, what I was going to suggest is your red light is on. I don't know, I just may get a nod from my colleagues, whether we have any questions of counsel for the other side, and then we would give you an opportunity to stand up and talk again if that's, does that work for you? I have a question for the union. Why don't you come to the podium, Ms. Lozier, please, and we'll note present. Doesn't she get her stage three hearing? Absolutely. So why hasn't it been held? It's supposed to be 15 days. I'm glad you asked that question. It's a very good question. Ms. Green has made a decision after consulting with her counsel not to proceed with the step three grievance meeting. My colleague at my law firm was informed by her prior attorney that they would not be proceeding with that process, and after Judge Broderick's decision, a step three meeting with the employer and Nadine Williamson was scheduled, and Ms. Green did not appear for it. And so what we have concluded, because we've been told so directly, is that she will not participate in that process, even though the union would very much like to do so, because that is the way that you get a remedy under the CBA, is to have a step three hearing. If the employer denies the grievance, then the grievance can move to arbitration and be assigned to an arbitrator. An arbitrator has the authority at that point, if the grievance has merit, to reinstate the grievant, the appellant, to award back pay, but none of that can happen unless she participates in the process, which she has opted not to do. Up to now? Up to now. She's not foreclosed from doing that within a reasonable period of time? Saying, yes, I would like to go to step three? Well, I think we would. Could she walk out of there and say, yes, I'd go to step three, and you'd help arrange that? We would. The union's perspective is that we absolutely would. Okay. Anything else? Did you want to respond to that? Are you willing to do that? No, I'm going to get to that. I'm sorry. Anything else? Ms. Lozier? Yeah, great. Your Honor, that is absolutely not true. There was no third-step hearing, and she told the untruth when she said there is a remedy. There is no remedy. We are tying barred from arbitration. We're tying barred from a third-step hearing. I don't know what she's talking about. You only have 45 days for a third-step hearing. It's been a year and change up to now. It's four years, and I still have not a third-step hearing. I have no idea what she's talking about unless they create a new contract. All right. So let me ask you, or Judge Droney may ask you a follow-up as well, but would now, having heard what you've heard, would you proceed to a step-three hearing, or are you declining the union's offer, which I heard them make here, to have a step-three hearing? I am declining on these grounds. They said the same thing at the lower court. This is why Judge Broderick . . . Oh, I just want to say something. No, no. I think somebody called. Okay. That's why Judge Broderick dismissed without prejudice, because they were claiming there was this path to an arbitration, which I knew wasn't true. Do you want a step-three hearing? That's very hard to say, because I don't trust that I would get a . . . I'm out of work for four years now. And for them to say, oh, we're going to give a third-step hearing again, for them to say, oh, okay, and now it's another year, and they're not doing anything. They haven't done anything from the time I was terminated. She's telling untruths when she says what she's saying up here. Well, does that answer whether you do or don't want one? I don't know if you can get one in the next 45 days. Do you want a day to think about that, and then let the court . . . I mean, what would be my remedy if I didn't get one in 45 days? I would have to come and make another appearance in court. This is a long time already. We could defer decision on this pending your, on this case, pending your having a step-three hearing that proceeds, and then you could let us know afterwards whether you want a decision one way or the other. But only if you want a step-three hearing. Only if you want it. But part of my issue with this suit is 1199 and both, that's why they have, they are both in this suit. They don't act in good faith. I, at this point, my heart is heavy. I'm not quite sure what to do. Because you can't, you can't, if you don't win an arbitration, I was a contract administrator for many years, and I know what the procedure is. And if you lose an arbitration, that's not grounds to say, oh, well, I wasn't in, you can't do that. And I know that. And I also know when I'm not being represented. I also know when someone's just going through the motions and pretending. And I believe this is what they're doing. And as a matter of fact, Your Honor, I got paperwork to tell me that they were not coming today. That's why I'm not prepared. I thought it was going to be just me speaking. That's what made me nervous. I was like, wow, I'm not prepared for what they're going to say. But I can answer it anyway, I'm hoping. Sotomayor.  So I think back to what Judge Sack and I and we're. Can we give Ms. Green a 24 hours or 48 hours to tell us what to do?  Yes, yes. And if we don't hear in whatever the time is, we will take that as an answer that she does not want it. Can I also, if I have a minute? I didn't get you. I know I was nervous. I was planning on running through that in my five minutes. And I wasn't able to. But I do want to make for the record this 301 that I read with Vaca v. Sipes, where I don't see anywhere, not even in Judge Broderick's decision. I just want to make it, you know, you're aware of it. We're aware of whatever you put in your paper. And that it doesn't have to be a hybrid, which is what was said in the lower court decision. Okay. All right. So would you like a day or two to make a decision about whether to proceed? My heart's doing like this. I understand. But that's why I want to. I don't trust them anymore. I just don't. That's not the question. The question is, would you like to wait two days so that your heart will stop palpitating and you can decide? Either way, decide. But you've got to decide within whatever the presider says the time is. Otherwise, we take your decision to be no, you won't. Okay. Then I have a question, if I can ask it. Sure. If I do decide to go through a third-step hearing, and, of course, that's a process that we may know, the process of arbitration needs to be expedited. That needs to be part of the deal. I've been unemployed for four years. So we have a process here called CAMP, which is, I can't remember what it is, but it's essentially a mediation process. And I'm wondering if a neutral mediator, who is not a judge, who is a person who doesn't tell us what he or she discusses with the parties, if, and I'm asking counsel as well on the appellee's side, whether we couldn't perhaps get this back on track by having a CAMP mediator try to work with both sides and evolve a process that might help both of you. And this is a person who essentially conducts the discussions back and forth, and maybe you could get the fine details. It is difficult, if not impossible, for us up here to say, yes, the union has to do it, and they have to expedite it and that sort of thing. But it is certainly something that the three parties could agree to and then an order be entered by the mediator. I'm feeling much better about that process than an arbitration situation, because I know how they work. Well, it's not going to affect your job, I don't think. What it would do, it would not be the step three process, it would be the rules under which the step three process would go forward, as I see it. But I will leave that to the parties. No. I thought that you were saying that this CAMP program would be in lieu of the arbitration, they would make the decision. No. We don't have that authority. We have the authority to help you set up a process that gets you back to step three. Step three. Sure. And why don't we do this? We will, Ms. Green, we will give you 48 hours to make a decision, and then we will, after that, make our decision. And one of the decisions could be that you could have a CAMP mediator try to help work this out. And understand, we have read your papers, we have your arguments here, which, frankly, were quite good and well presented, so we understand what your arguments are. And all you need to do is, by what's today, Tuesday, by the end of the workday, Thursday, let the clerk's office know whether you would like two options, essentially, either to get together with the union and go to step three, or you would like a CAMP mediator to help you get an agreement with the union on how the step three process will go forward. Your Honor, part of my, I know you've read my papers. Yes. They don't operate in good faith. That's why I am here. To go through the motions, I can't afford this type of thing. If the CAMP is not going to, I don't actually understand it, if I can read a pamphlet or something. But to give them another opportunity to stick a knife in me, I don't want it. I don't want it. And they're laughing at me, too. I don't want it. So you don't want the? I would rather rely on your decision. Very well. All right. Thank you very much. We have heard from both sides, and we will reserve decision and get you a decision shortly. May I say one thing? Yes. Mr. Frank, if you'd come to the podium. And, Ms. Green, if you'll stay just for a minute, then we'll. May it please the Court. In March of 2016, Plaintiff's counsel explicitly wrote a letter, it's in the record, saying she did not want to proceed with the arbitration. And that is part of the record in this case. Right. No, no. She's repeated that now, so. And the reason I asked for a minute is that despite the sympathy that the appellant is raising, there's no evidence in this record that the union acted in a manner that would justify a remedy under well-established precedent on a DFR case. Thank you. And I think the hospital acted properly, and there's circumstances that the whole process should not be interrupted and sent back to arbitration after this period of time where there was no breach of the duty. It doesn't matter. It doesn't matter. Nobody said she doesn't want to do that. Okay. Thank you. What about sending the notice to the mother's house and not rescheduling it for 7 months? Even if that occurred, and we weren't part of that, the hospital wasn't part of that, I don't think that's a breach of the duty. That's not enough under established law to establish the invidious conduct that creates a duty, a breach of the duty of fair representation, which is a prerequisite to holding the hospital involved in this case. Why wouldn't it be? Because next. No, just a minute. Why wouldn't it be if you said, if it's alleged that she sent the notice to the wrong address on purpose, and then when it was discovered, took 7 months to schedule the Step 3 hearing, when the collective bargaining agreement says 15 days? How is that not if true? I'm not saying it is true. But if it were true, why isn't that enough to say that it looks like bad faith to me? The jurisprudence of this Court has been that delay is not enough to establish the bad faith. That there has to be something more than untimely delay, especially where rights aren't lost. The parties were willing to go to arbitration, they were willing to go to the third step grievance, and there are multiple occasions in the record where the grievance did not appear. But your client, this is basically between Ms. Green and the union, isn't it, up to this point? I'm sorry, Your Honor? Never mind. No, thank you. Thank you. Your Honor, I don't want to seem uncooperative. I had to say this, and I was going to say this, and actually I was preserving this until I had my trial. But when the nerves from St. Barnabas were so bad, I was ill, had to have medical treatment. When my medical doctor filed my disability papers, I was terminated with a letter to my house with 1199 full aware of it because they called me and told me to expect this termination. So this is what I feel the way I feel. I don't always say everything because I was hoping it would come out later. That's why in my paperwork it says for termination without cause amongst other things. And they would say, what's the other things? You'll hear about it. I never expected for them to say, you know, that we didn't exhaust our remedies because there is no way that the third step hearing could be heard. We're time-barred. We're time-barred from arbitration. So for a representative of 1199 and St. Barnabas to say that they're purposely misleading this court to put this around and around in circles, again, I just had to say that. I'm sorry. Thank you. Thank you very much. Thank you both for attending and for the arguments that you made. And we will reserve decision and get you a decision shortly. Thank you. And I will ask the clerk, please, to adjourn court. Court is adjourned. Thank you.